UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ROBERT W. CRITCHLOW,<br><br>               Plaintiff,<br>    v.<br><br>KATE E. CRITCHLOW, an individual, and JOHN A. WANER, an individual, and DOES 1-50, inclusive,<br><br>               Defendants.<br>_____/ | No. C 12-01198 LB<br><br>**ORDER GRANTING DEFENDANTS KATE E. CRITCHLOW'S AND JOHN A. WANER'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>[ECF Nos. 43 & 44] |

**INTRODUCTION**

In this lawsuit, Plaintiff Robert Critchlow ("Robert" or "Plaintiff"), the son of decedent Warren Critchlow ("Warren") and Joanne Critchlow, asserts five state tort claims for damages[1] against his father's second wife Kate Critchlow ("Kate") and her former attorney John Waner for their allegedly wrongful conduct in connection with his father's estate: (1) fraud; (2) negligent misrepresentation (Kate only); (3) concealment; (4) constructive fraud and breach of fiduciary responsibility (Kate only); and (5) conversion. Second Amended Complaint ("SAC"), ECF No. 40.[2] The court previously dismissed the claims in Plaintiff's First Amended Complaint as barred by the statute of

---

[1] Plaintiff seeks damages and punitive damages because "Defendants' conduct rises to the level of malice, oppression, and fraud." *Id.* ¶¶ 25, 26.

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 12-01198 LB (ORDER GRANTING MOTION TO DISMISS)

limitations and gave leave to amend. *See* Order, ECF No. 39. For the reasons stated below, the court grants Defendants' motions to dismiss with prejudice.

## STATEMENT

### I. FACTUAL ALLEGATIONS IN THE SAC

**A. The Parties and Warren Critchlow's Will and Trust**

Plaintiff Robert Critchlow resides in Washington state and is the son of Warren and Joanne Critchlow. SAC, ECF No. 40, ¶ 4. Warren Critchlow died in Santa Rosa, California, on February 23, 2003. *Id.* ¶ 12. At the time, he was married to Kate Critchlow, his second wife, a resident of Santa Rosa, California. *Id.* ¶ 5. Her former lawyer, John Waner, also resides in Santa Rosa. *Id.* ¶ 6.

According to Kate Critchlow, on September 26, 1989, Warren Critchlow executed a Last Will and Testament (naming Kate as the first proposed Personal Representative and Robert as the second) and established the Critchlow Family Trust ("the Trust") (with Kate as the trustor and/or trustee). *Id.* ¶¶ 12-13. The will devised all of Warren's property to the Trust. *Id.* ¶ 13. As Warren's natural son, Robert is an heir to Warren's estate and allegedly was named as a legal heir in the Will and is a beneficiary of the Trust. *Id.* ¶ 14. Other Trust beneficiaries allegedly are Edward R. Critchlow, Peter Wenzel, Hans Joachim Patzold, and Isolde Payne. *Id.*

Part of Warren's estate was separate real property that he inherited from his mother (and Plaintiff's grandmother) Kathryn Rogers. *Id.* ¶ 14. Kate Critchlow acknowledged that this inheritance was separate property by signing an interspousal grant deed on March 18, 1994. *Id.* ¶ 15.

**B. The Surviving Spousal Property Petitions**

On January 8, 2008, Kate and her lawyer John Waner filed a First Surviving Spousal Petition in Sonoma County probate court that – according to Waner's sworn declaration – was served on Robert by regular mail. *Id.* ¶¶ 20-21. Attached to the petition was an unsigned copy of the Will that did not have Warren's or the two witnesses' signatures but instead had a stamped notation that "these signatures were on the 'original.'" *Id.* ¶ 22. Robert did not receive the notice and was unaware of the proceedings, and he thus was "deprived of his statutory and common law rights to be notified of all events concerning the estate and therefore his opportunity to participate in the determination of

any rights Plaintiff had in and to any of the estate assets, proceeds, income, gains or distribution of the estate and to inquire into and object to the handling of said property by others, including Defendant Kate Critchlow." *Id.* ¶ 21. He alleges that "as later discovered, there was in fact no original Last Will and Testament of Warren A. Critchlow." *Id.* ¶ 22.

As a result of these actions, "Kate Critchlow and John Waner obtained an order from the Sonoma County Probate Court administering and distributing the Warren A. Critchlow estate property to Kate Critchlow when, as later discovered, she did not have the lawful right to do so," which meant that "[a]s a result, Plaintiff was deprived of his rights as heir to the property of the estate by intestate succession." *Id.* ¶ 23. Because only Kate had access to information "concerning the nature of the property, Plaintiff is unable to ascertain whether he was deprived of estate property by virtue of his rights as heir of the estate, or as a beneficiary of the purported Trust." *Id.*

On September 26, 2005, Kate and her new lawyer, Jerry Abbott, filed a second Surviving Spousal Property Petition in Sonoma County Probate Court that realleged the facts of the first petition and asked to administer and distribute Warren Critchlow estate property that had been left out of the first petition. *Id.* ¶ 24. Plaintiff received a mailed copy that did not have the "copy" of the Will attached to the first petition and instead bore the notation "copy of will previously filed." *Id.* "As a result of these continued fraudulent representations Defendant Kate Critchlow obtained yet another order from the Sonoma County Probate Court transferring and confirming additional Warren Critchlow estate property." *Id.*

**C. Plaintiff Asks For Information and Discovers There Was No Original Will**

On March 23, 2009, Kate submitted a declaration (presumably in Probate Court) in which she admitted the will was lost and that she knew this before she and Waner filed the First Surviving Spousal Petition. *Id.* ¶ 25. After Robert tried to notice Kate's deposition, her lawyer, Charles Maguire, filed a motion to quash, stating that "We never contended that there is no pour over will; we just can't find it." *Id.*

Before learning in March 2009 that there was no original will, "Plaintiff made repeated inquiries for information," including certified letters to Kate dated June 23, 2008 and July 28, 2008, "requesting documentation and information from Defendant about the affairs of the Warren

Critchlow estate, information which, by virtue of her fiduciary duties, Defendant Kate Critchlow was required to disclose truthfully to Plaintiff as she claimed to be trustee of the . . . Trust." *Id.* ¶ 26. Kate "had a duty to file an interim or final account in writing and/or other written report, which she did not do." *Id.* ¶ 27. Instead, Kate responded that because the Trust was revocable and she had the power to revoke it, she did not have to provide any information. *Id.* Nothing adequately disclosed to Plaintiff the existence of a claim against Kate for breach of trust until March 23, 2009. *Id.*

Plaintiff nonetheless tried to get access to information – including a copy of the will – by seeking a copy of the First Spousal Petition and its attachments (including the Will). *Id.* ¶ 28. On November 6, 2008, he also filed a Safe Harbor Petition in Sonoma County Probate Court and attached the two spousal petitions and attachments. *Id.* ¶ 30; *see* Safe Harbor Petition, Kate Critchlow's Request for Judicial Notice ("RJN") Supp. Mot. to Dismiss Pl.'s 1st Am. Compl. Ex. C, ECF No. 28-1 at 11-12.[3] In the petition, Plaintiff said that he asked Kate for information about the trust and she refused and that instead of probating the will, Kate filed surviving spousal property petitions. *Id.* ¶ 31; Safe Harbor Petition, ECF No. 28-1 at 12. He asked the court "to determine whether his proposed Petitions/Actions 'A' through 'L' would violate the 'no contest provision' of decedent Warren A. Critchlow's Last Will and Testament." Safe Harbor Petition, ECF No. 28-1 at 13. In the Safe Harbor Petition, Plaintiff explains that by his individual petitions in Exhibits A through L, he "wants to bring a petition to determine" the following (broken down by individual petition A through L):

   A. Whether Kate violated her fiduciary duties, breached trust, and had conflicts of interest by filing a surviving spousal petition to transfer property to herself when Warren wanted the estate to go to the Family Trust;

   B. Whether he can set aside the orders Kate obtained from the probate court for her non-probate transfer of her non-consenting spouse, Warren's, share of community property because it was done without his written consent and was not done as a "petition for instructions";

   C. Whether Kate committed a fraud on the court by failing to certify her fact assertions under penalty of perjury in that she certified that all property was community property of the trust when in fact Warren inherited real property from his mother (and Plaintiff's grandmother) Kathryn Rogers;

---

[3] As it did previously, and for the reasons stated below, the court takes judicial notice that the document was filed and that Plaintiff made statements in it. *See* 11/14/12 Order, ECF No. 39, at 8-11.

D. Whether Kate converted Warren's separate property (the proceeds from Warren's sale of Kathryn Rogers's house;

E. Whether Kate committed fraud upon the court or violated her fiduciary duties when she "failed <u>to file the original will</u> with the registrar of wills as required by California Probate Code Section 8200" and "failed to file <u>even a signed copy of</u> decedent's will with her surviving spousal petitions (and noting (a) how it was impossible to tell from the unsigned copy who the witnesses were, (b) if Kate were a witness, she would be an "interested witness" when the law requires two disinterested witnesses, and (c) Warren had Alzheimer's, which raises issues of whether Kate avoided probate);

F. Whether Kate is liable for statutory damages or equitable relief because she did not send Robert required statutory notices and refused to provide him copies of the Trust or an accounting of property in the Trust;

G. Whether Kate should be removed as Trustee because of her breach of fiduciary duties, conflicts of interest, and her fraud on the court;

H. Whether Warren and Kate revoked the Trust when they signed a Homestead Declaration about the Trust property in 1993;

I. Whether Kate revoked the Trust by filing her spousal petitions to transfer estate property to herself as surviving spouse;

J. Whether Kate elected to take under California statutory rights rather than take under Warren's will when she filed her surviving spouse petitions;

K. Whether Kate violated the no contest provision of Warren's will by filing her spousal petitions; and

L. Whether Robert has claims for damages against Kate for her breach of trust, conflicts of interest, and frauds on the court.

Mem. Supp. Safe Harbor Petition, RJN Ex. C, ECF No. 28-1 at 33-41. The separate petitions A through L are the specific requests for relief discussed in the memorandum. *See id.* at 42-57.

In the SAC, Plaintiff explains that he filed the Safe Harbor petition not only to get a ruling on the "no contest" clause of Warren's will in case he filed later claims but also to "obtain information and formal 'discovery' about the administration of the estate property." SAC, ECF No. 40, ¶ 32. His separate petitions A through L were "hypothetical petitions/actions/exhibits to his Safe Harbor Petition to alert the court as to the areas of information he sought to inquire into with his 'discovery' requests." *Id.* ¶ 32. In SAC paragraphs 34 through 39, Plaintiff summarizes and quotes from his Safe Harbor petition to illustrate the relief he requested was information about issues ranging from Kate's failure to file the original will or probate it (possibly due to Warren's Alzheimer's and surrounding issues of duress) to whether she converted Warren's separate property from the sale of

C 12-01198 LB (ORDER GRANTING MOTION TO DISMISS)      5

Kathryn Rogers's house. Plaintiff alleges that he had no reason to suspect that there was not an original will because Kate said she had it. *Id.* ¶ 40. Assuming that there was a will, he was only trying to find out information. *Id.* ¶ 41. And rather than admitting that there was no will, Kate's attorney, Charles Maguire, stipulated on January 14, 2009[4] that Plaintiff's requests A through L did not violate the no-contest clause of Warren's will. *Id.* ¶ 43; *see* Stipulated Order, RJN, ECF No. 28-1 at 6. Kate and Maguire responded to Plaintiff's first request for documents, but then refused to provide further discovery and opposed all of his discovery requests (including depositions), which the probate court ultimately denied in April 2010. SAC ¶ 33. Plaintiff alleges that "Defendants"[5] agreed to the stipulation because "they knew there were no actual claims for any relief, monetary or otherwise being made at this time by Plaintiff; (2) there was no actual will; and (3) Defendants sought to avoid and make 'moot' the depositions that had already been scheduled by Plaintiff for" December and January."[6] *Id.*

Plaintiff learned for the first time that Kate did not have the original will when she filed a declaration on March 23, 2009 saying that she did not have the original and knew that when she filed her first spousal petition in September 2008. *See id.* ¶ 45. Plaintiff alleges based on information and belief "that there either never was a signed original of the will or that the original had been lost or destroyed, possibly in bad faith." *Id.* On March 23, 2009, Kate sent Plaintiff a document dated September 9, 1989 and titled "Critchlow Family Trust Documents" that listed four "alleged estate planning documents": (1) Revocable Trust; (2) Pour Over Wills; (3) Community

---

[4] Paragraph 33 of the SAC states that the stipulation was signed on January 14, 2010, while paragraph 43 says January 14, 2009. The court presumes that January 14, 2009 is the correct date based on the stipulated order in Kate's Request for Judicial Notice. RJN Ex. A, ECF No. 28-1 at 5.

[5] Plaintiff uses the words "Defendants" in the SAC but the stipulation was by Kate and her then-attorney Charles Maguire.

[6] Plaintiff alleges different years for the December and January depositions: December 20, 2008 and January 13, 2009, *see* SAC, ECF No. 40, ¶ 44, and December 30, 2009 and January 4, 2010, *see* SAC ¶ 33. The 2008 and 2009 dates are the only dates that make sense in the time line at this point. At the same time, Plaintiff apparently noticed new depositions after Kate's March 2009 declaration revealed that she did not have the original will. SAC ¶ 51. The court follows the general time alleged in the complaint.

Property Agreement; (4) Durable Power of Attorney for Health; and (5) Physician's Directive. *Id.* ¶ 46. Plaintiff "was not provided these documents except for a few (incomplete) pages of the alleged 1987 Critchlow Family Trust." *Id.* Plaintiff alleges that Kate disclosed this information only because she was forced to by Plaintiff's pursuit of discovery and information from her that had not been forthcoming. *Id.* ¶ 48. Plaintiff alleges that the March declaration revealed "for the first time" Kate's previous misrepresentations of facts and put him on notice of claims against her. *Id.* at 49. This changed his mind that there was an existing will that controlled his rights and instead showed wrongdoing by Kate. *Id.* ¶ 50. This revelation mooted his claims in his Safe Harbor petitions A through L, which all were predicated on the existence of a will. *Id.*

"Because of this new revelation" by Kate, Plaintiff sought to depose Kate and requested the four alleged estate planning documents. *Id.* ¶ 51. Kate and her attorney refused to comply. *Id.* At some point, Kate also moved to dismiss the Sonoma action on the ground that Plaintiff had not filed any of the Exhibits A through L (which were only hypotheticals attached to the petition and not actual petitions) and also moved to quash the depositions. *Id.* ¶¶ 52-53. Ultimately, the state court granted Kate's motions and dismissed the Sonoma Safe Harbor action, including Plaintiff's discovery requests, in April 2010. *Id.* ¶ 53.

Plaintiff alleges that all of this demonstrates the following:

> Defendants intended to defraud Plaintiff by concealing information from him in order to deprive Plaintiff of the information he was entitled to, and his rightful share of his portion of his father's estate, whether it be by intestate succession, by will, or by administration of a trust that his father intended for him or which he was, by law, entitled to. From this information, Plaintiff is [*sic*] further believes, and thereon alleges, that Defendants Kate Critchlow and John Waner purposely used the SSPP procedures instead of petitioning to formally probate a 'lost will' because Defendant Kate Critchlow, as Personal Representative, would have had to conduct and file with the courts an appraisal and inventory of all the Warren Critchlow estate property which would have required disclosure of information to Plaintiff and others. Defendant Kate Critchlow, as Personal Representative would also have had to provide copies of these appraisals and inventories to Plaintiff. Probate Code Sections 8800 & 8803. The evidence revealed so far since revelation of the facts on March 23, 2009 cause[s] Plaintiff to be informed and to believe, and thereon to allege, that Defendants purposely avoided formal probate of a 'lost will' because they wanted to conceal from Plaintiff the inventory of properties, and whether any of these estate properties might belong to Plaintiff and that Defendants purposely used a non-existent will in their SSPPs which contained a 'non contest clause' with the purpose of causing investigation or deterring Plaintiff from investigating the facts surrounding the administration of the Warren Critchlow estate property by using the likely fear of 'forfeiting' any claims that Plaintiff might have to any estate assets.

*Id.* ¶ 55. Plaintiff further alleges that:

> The March 23, 2009 revelation was substantial and material and would have revealed, at most, an entirely different set of potential claims than the ones that Plaintiff hypothetically mentioned to the Court in Sonoma. Because there now appeared to have been no will, Plaintiff is informed and believe, and thereon alleges, that all of Plaintiff's father's separate property, and all of his share of community property, passed by the laws of intestate succession to the heirs of Plaintiff's father, not to the purported Trust, as previously believed from Defendants' representations that there had been a pour-over will which determined the flow of decedent's property, which basic and material fact had been misrepresented. Accordingly, the claims being made here, arise out of the fact that Warren Critchlow had no will and that, because of the false statements and misrepresentations of Defendants, Plaintiff suffered losses to his interests.

*Id.* ¶ 56. Plaintiff reiterates that he believed that Kate was trustworthy, was family, and had said that there was a will, and he relied on this reasonably and in good faith. *Id.* ¶ 60.

Plaintiff also alleges the following:

- Kate and Waner falsely represented that there was an original will and colluded to conceal that fact from the beneficiaries. *Id.* ¶ 66.
- Waner created the fraudulent documents with the false representations that there was a signed will. *Id.* ¶ 71.

## II. PROCEDURAL HISTORY

Plaintiff filed his federal complaint on March 9, 2012 (about two years after the state court dismissed his safe harbor petition) and then a First Amended Complaint ("FAC") after Defendants filed motions to dismiss. *See* ECF Nos. 1, 17, 20, 24. After Defendants filed motions to dismiss, the undersigned dismissed the FAC on November 14, 2012 as to Kate without prejudice based on the applicable statute of limitations. *See* ECF Nos. 28, 29, 39 at 11-17 (claims for breach of trust and fiduciary duties subject to three-year statute of limitations in California Probate code section 16460; fraud and conversion claims also subject to three-year statute of limitations; analysis based on accrual of claims on November 8, 2008, the date that Plaintiff filed his safe harbor petition, and no allegation of facts to support tolling). The court also dismissed the fraud claim for failure to plead fraud with particularity. The undersigned also rejected Kate's argument that the probate exception to federal jurisdiction barred Plaintiff's claims and did not reach her argument that Plaintiff failed to establish a causal connection between her actions and Plaintiff's damages. Order, ECF No. 39 at 6-8, 17 n.8. As to Waner, the undersigned dismissed the claims without prejudice on statute of limitations grounds: for breach of fiduciary duty as barred by the one-year statute of limitations in

Cal. Code Civ. Proc. § 340.6, and for fraud and conversion based on the same reasons that applied to the claims against Kate. *Id.* at 19-20. The court rejected Waner's argument that Plaintiff's fraud claim was not pleaded with particularity. *Id.* at 18.

Plaintiff filed the SAC on December 10, 2012 and Defendants filed the pending motions to dismiss the SAC on January 7, 2013. *See* SAC, ECF No. 40; Waner Motion to Dismiss SAC ("Waner Motion"), ECF No. 43; Kate's Motion to Dismiss SAC ("Critchlow Motion"), ECF No. 44.

## ANALYSIS

## I. STANDARDS FOR MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed Factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other Facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

*v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**B. Request for Judicial Notice**

Kate asks for judicial notice of the same documents as in the previous motion. *See* ECF No. 44-2 at 1, n.1. The court take judicial notice of them for the same reasons and to the same extent as set out in the court's prior order. *See* Order, ECF No. 39 at 8-11. The court observes that – contrary to Plaintiff's assertions in his brief – the court is not considering the truth of his statements in these documents, nor did it previously. *See* Opp'n, ECF No. 49 at 13 & n.3, 21; Order, ECF No. 39 at 11 (court does not take notice of facts in documents and only considers fact that Plaintiff made the statements or had notice of the claims in the federal case). Also, Plaintiff incorporates the pleadings in the Safe Harbor petition into the SAC, and the court may consider them on that basis too.[7]

**II. KATE CRITCHLOW'S MOTION TO DISMISS**

Defendant Kate Critchlow argues that Plaintiff's claims are time-barred, the probate exception to federal jurisdiction applies, and Plaintiff has not alleged claims or pleaded causation adequately.

---

[7] In deciding a motion to dismiss, the court may consider material incorporated by reference into the complaint without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri–Plex Technologies, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007). Documents are incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd by statute on other grounds*; *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (considering an agreement that was not specifically incorporated into the complaint because the complaint "relies heavily upon its terms and effect" such that the agreement is "integral" to the complaint). The defendant can attach to a motion to dismiss documents referenced in the complaint in order to refute the plaintiff's claims and the court may consider them. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds in Galbraith v. County of Santa Clara* 307 F.3d 1119, 1127 (9th Cir. 2002)).

*See* Mot., ECF No. 44 at 13-17. Plaintiff counters that a statute of limitations defense ordinarily should not be dispositive with a motion to dismiss, his claims did not accrue when he filed the safe harbor petition in November 2008, and he established equitable tolling at the pleadings stage.[8]

**A. Statute of Limitations and Equitable Tolling**

"A defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of." *Hernandez v. Sutter W. Capital*, C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010) (granting motion to dismiss on statute of limitations grounds based on judicially-noticed dates); *Low v. City of Sacramento*, No. 2:10-CV-01624 JAM, 2011 WL 2935858, at *4 (E.D. Cal. July 18, 2011). For example, if dates in a complaint are contradicted by facts that are properly the subject of judicial notice, the court may consider the judicially-noticeable facts. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of information in the public realm at the time); *Baublitz v. W. Valley Coll. Chancellor's Office*, No. C-97-3799 VRW, 1998 WL 345396, at *1 (N.D. Cal. June 16, 1998) (disregarding date alleged in the complaint because it was contradicted by date in judicially-noticed public record and granting motion to dismiss).

The main issue here is when Plaintiff should have known that his claims accrued. A second issue is the applicable statute of limitations for the claims.

*1. Accrual of Claims and Tolling*

In California, the "discovery rule" postpones accrual of a claim until a plaintiff discovers, or has reason to discover, the cause of action. *Clemons v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). California applies a special standard in cases of fraudulent concealment, which Plaintiff essentially claims here. *Id.* "Plaintiff must show '(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing

---

[8] The court previously rejected the argument that the probate exception to federal jurisdiction mandates Rule 12(b)(1) dismissal. Order, ECF No. 39 at 6-8. At least as alleged at the pleadings stage, Plaintiff crafts his arguments as state tort claims for damages and the court rejects the jurisdictional arguments for the same reasons as before.

to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974). "A plaintiff must affirmatively excuse his failure to discover the fraud within three years by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 129 (1975).

"Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will trigger the statute of limitations period." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). "[T]he statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988). "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* at 1111.

In *Jolly*, the California Supreme Court reaffirmed its opinion in *Miller v. Bechtel Corp.* 33 Cal. 3d 868 (1983), a case that involved a plaintiff who "filed suit soon after she discovered facts confirming her long-held suspicion that her former husband had concealed the true worth of his assets during dissolution negotiations." *Id.* The plaintiff had doubts when she signed her dissolution agreement about the actual value of her husband's Bechtel stock, but she and her attorney did not take adequate steps to investigate. *Id.* Years later, "when the stock was sold for an amount well beyond that stated during the dissolution discussions, plaintiff brought suit." *Id.* The *Miller* court held that "her early suspicion put her on inquiry notice of the potential wrongdoing, which an investigation would have confirmed. Her failure timely to investigate barred the action. This conclusion was reached over a strong dissent, in which it was argued that the statute of limitations should not begin to run until plaintiff discovered the *facts* constituting the misconduct – her mere suspicion was not enough." *Id.*

Kate argues that the SAC and the Safe Harbor petition establish that Plaintiff suspected her

alleged fraud by November 2008 (when he filed his safe harbor petition) and that his claims accrued then and triggered the statute of limitations. Mot., ECF No. 44 at 14. Her best argument is that Plaintiff's new allegations about his state of mind when he filed the safe harbor petition do not change the fact that he had suspicions about her as of that date. *Id.* She concludes that nothing supports tolling. *Id.*

Plaintiff's best argument is that what he asked for in the safe harbor petition was about Kate's failure to probate the will (possibly due to Warren's Alzheimer) or whether she disclosed information about Warren's separate property. *See infra* at 5-7. According to Plaintiff, that inquiry – about what information was disclosed or what conflicts of interest existed – is very different than knowing that she did not have an original will at all. *Id.* Her whole course of conduct in probate court – from the filing of the spousal petitions in 2008 through her agreement that the safe harbor petition did not violate the no-contest clause to her refusal to provide information – all were designed to defraud him. *Id.*

The difficulty here is that Plaintiff alleges a course of conduct by Kate to conceal information by using the spousal petition process. *See* SAC ¶ 55. The new fact – that there was no will at all – is the only different fact allegation. Also, the safe harbor petition has many assertions about the will, including the assertion that Kate did not file it because she was concerned that it would reveal her status as an interested party and Warren's lack of capacity. *See* Safe Harbor Memo, ECF No. 28-1 at 38. The court does not see a meaningful distinction between the allegations in the safe harbor petition about Kate's suspected wrongdoing and the new allegation that the original will does not exist or was lost or destroyed (possibly in bad faith). *See* SAC ¶ 45. All involve her alleged malfeasance surrounding the will and her use of a process to essentially cut Plaintiff out of his share of his father's separate property and community property. *See supra* at 4-5 (setting forth the allegations in the safe harbor petition). Plaintiff's allegations – that Kate was family and he trusted that a will existed – do not change the outcome either: he suspected Kate's self-dealing as of November 6, 2008.

The additional cases that Plaintiff cited at oral argument do not alter the court's conclusion. In *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, Platt raised a negligent misrepresentation claim against

C 12-01198 LB (ORDER GRANTING MOTION TO DISMISS)          13

a non-profit consumer safety group on the ground that the consumer group negligently put its mark on heaters, thereby representing that the heaters were safe. 522 F.3d 1049, 1052 (9th Cir. 2008). Platt argued that it was entitled to rely on the existence of the mark and did not have to do an independent investigation. *Id.* at 1053. The district court disagreed, determining that once Platt became aware – through a recall and class action – that the products were potentially defective, the statute of limitations began to run. *Id.* The Ninth Circuit affirmed, holding that a claim accrues when a plaintiff "either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements" and that "[s]o long as there is a reasonable ground for suspicion, the plaintiff must go out and find the fact; she cannot wait for the facts to find her." *Id.* at 1054 (citations and quotations omitted). Here, the court's view is that the new fact allegation of "no will" is sufficiently similar to the facts at issue in the safe harbor petition such that the statute of limitations was triggered as of November 2008 when Plaintiff filed the safe harbor petition.

Plaintiff also cites *Hamilton Materials, Inc. v. Dow Chemical Corp.,* 494 F.3d 1203 ( 9th Cir. 2007). There, Hamilton challenged allegedly fraudulent misrepresentations about asbestos products. *Id.* at 1206. The issue was when – in the face of ongoing scientific debate about the safety of Calidria – Hamilton was on notice. *Id.* Citing *Miller v. Bechtel*, the Ninth Circuit held that Hamilton need not be on notice of Dow Chemical's specific intent to deceive but instead, "[a]ll that is relevant is that a reasonable person – especially a sophisticated manufacturer of asbestos – would have been on notice of a potential misrepresentation." *Id.* at 1206-07. Plaintiff's best argument here is that Kate was family and a "fiduciary", and thus he was entitled to rely on her. But – as with reliance on a mark – the issue is when Plaintiff was put on notice of malfeasance. *See id.*

*Fox v. Ethicon Endo-Surgery, Inc.* does not alter this conclusion either. There, Fox had gastric bypass surgery, fell ill afterwards, and ultimately had exploratory surgery a few days later that showed that a perforation at the stapled closure caused fluids to leak into her abdominal cavity. 35 Cal. 4th 797, 803-04 (2005). The second post-op report did not identify the cause of the perforation. *Id.* at 804. After Fox sued and deposed the doctor, he testified that the specific stapler used had caused post-surgery leaks for other patients. *Id.* Fox then added a products liability claim against the manufacturer. *Id.* The Court of Appeal reversed the superior court's sustaining of the

manufacturer's demurrer and remanded to allow Fox to amend to allege facts explaining why she could not discover earlier the facts surrounding her products liability claim against the manufacturer. *Id.* at 805-06. In affirming, the California Supreme Court declined to impose a rule that all claims arising from an injury accrue simultaneously. *Id.* at 807-15. It distinguished cases where plaintiffs have reason to suspect that a product caused their injuries from cases where they do not, and observed that "a diligent patient's investigation may only disclose an action for one type of tort (e.g., medical malpractice) and facts supporting an entirely different type of tort (e.g., products liability) may, through no fault of plaintiff, only come to light at a later date. Although both claims seek to redress the same physical injury to the plaintiff, they are based on two distinct types of wrongdoing and should be treated separately in that regard." *Id.* Applying that logic here, again, this is not a case where there is a wholly different cause of Plaintiff's injury and a wholly different theory of liability.

Citing *Hamilton*, Plaintiff also argued at the hearing that the issues about the discovery rule are fact issues. "[W]hether there has been a *discovery* within the contemplation of the statute [of limitations] is a question of law to be determined by the court from the facts pleaded." *See Woodring v. Basso*, 195 Cal. App. 2d 459, 466 (1961). It is only a fact issue "where the facts alleged were susceptible to opposing inferences." *Hamilton*, 494 F.3d at 1207. Here, the court considers only the facts as alleged and concludes that the "new" fact of "no will" is not meaningfully different from the facts at issue in the safe harbor petition about Kate's malfeasance about the will and her use of the spousal petition to cut Plaintiff out.

In sum, the SAC does not change the court's previous conclusion that the claims accrued on November 6, 2008.

Plaintiff's final argument is that Kate's conduct post-November 2008 induced him to forbear from filing suit. Opp'n, ECF No. 49 at 34-45, n.11.[9] This is an equitable tolling and an equitable estoppel argument. *Id.*

Equitable tolling may extend the time periods for filing a lawsuit if (1) the plaintiff's ignorance

---

[9] Plaintiff refers to both defendants but does not explain how tolling applies to Waner.

C 12-01198 LB (ORDER GRANTING MOTION TO DISMISS)    15

of the existence of a claim within the limitations period is excusable, and (2) there is no prejudice to the defendant. *See Johnson v. Henderson,* 314 F.3d 409, 4141 (9th Cir. 2002); *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  Equitable tolling applies when – despite all due diligence – the plaintiff is unable to obtain vital information bearing on the existence of his claim. *Santa Maria*, 202 F.3d at 1178.  The test is whether a reasonable plaintiff would not know of the existence of a claim within the statute of limitations period. *Id.*

The elements of equitable estoppel are that (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. *Lehman v. U.S.*, 154 F.3d 1010, 1016 (9th Cir. 2008).

The post-2009 conduct is that Kate kept lulling Plaintiff along by, for example, stipulating that his safe harbor requests did not violate the no-contest clause of Warren's will, knowing that there was no will and knowing that Plaintiff had not made any claims for relief. *See* SAC ¶ 33.  The court cannot see why this would change the outcome.  The gravamen of Plaintiff's claim is that Kate concealed information from him to obtain Warren's estate for herself.  The "fact" of the missing will does not change the court's view that Plaintiff's knowledge of Kate's alleged misconduct was evident as of November 2008.

### 2. The Applicable Statutes of Limitations

The only remaining question is whether Plaintiff filed his lawsuit in time.

In the court's order dismissing the FAC, the court concluded that a three-year limitations period applied to Plaintiff's previous fraud and conversion claims. *See* Order, ECF No. 40 at 16-17. Plaintiff does not contest that determination, which applies to Plaintiff's first, third, and fifth claims for relief.

Kate argues that Plaintiff's negligent misrepresentation claim also is subject to the three-year fraud statute of limitations in California Code of Civil Procedure section 338(d). *See* Critchlow Mot., ECF No. 44 at 14, n.11 (citing *Bowden v. Robinson*, 67 Cal. App. 3d 705, 716 (1977) and *Tijesseling v. Gen. Acc. Fire & Life Assur. Corp.*, 55 Cal. App. 3d 623, 627 (1976)).  Plaintiff does

not dispute this assessment. The court notes that other courts apply the shorter negligence limitations period. *See, e.g., Ventura County Nat. Bank v. Macker*, 49 Cal. App. 4th 1528, 1529 (1996). Regardless, Plaintiff filed his lawsuit more than three years after November 2008.

Finally, Plaintiff's fourth claim for "Constructive Fraud & Breach of Fiduciary Duty" is subject to the three-year statute of limitations in California Probate Code section 16460(a)(2).[10] The court previously considered and rejected Plaintiff's arguments that a four-year limitations period applied, and Plaintiff cites no authority compelling a different finding. Accordingly, the court finds that a three-year statute of limitations applies to Plaintiff's second claim for relief as well.

In sum, all of Plaintiff's claims against Kate are barred by the statute of limitations.

## III. JOHN WANER'S MOTION TO DISMISS

Waner moves to dismiss Plaintiff's claims against him on the grounds that they do not state a claim and are barred by the statute of limitations. *See* Waner Mot., ECF No. 43.

Plaintiff asserts that his claims are primarily pleaded against Waner for aiding and abetting Kate's fraud (particularly by filing documents that relied on the existence of an original will). Opp'n, ECF No. 49 at 35; *see* SAC ¶¶ 66, 71. Plaintiff also argues that Waner – by aiding and abetting Kate – "himself owed direct duties to Plaintiff." *Id.* at 36 (citing SAC, ECF No. 40, ¶ 72).

As discussed above, Plaintiff's claims for fraud, concealment, and conversion all are subject to a three-year statute of limitations. Plaintiff's claims also are about why Kate (and Waner) filed the spousal petitions. All of this was known by November 2008, when Plaintiff filed the safe harbor petition. At best, the statute of limitations is three years, and Plaintiff's claims against Waner fail.

---

[10] In opposition, Plaintiff relies on *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906 (1995), for the proposition that the statute of limitations for fraudulent concealment of trust assets never begins to run until the trustee "repudiates" the trust. Opp'n, ECF No. 49 at 35, n.12. *Strasberg* does not hold that only repudiation triggers the statute of limitations. In that case, the plaintiff lacked "actual knowledge or reason to know" about the fraudulent concealment. That court distinguished other cases where the statute of limitations barred constructive trust claims by plaintiffs with reason to know of their claims. *Id.* at 918. Thus, *Strasberg* is consistent with California Probate Code section 16460, which imposes a three-year statute of limitations from when Plaintiff reasonably should have known of his claims.

C 12-01198 LB (ORDER GRANTING MOTION TO DISMISS)    17

**IV. Leave to Amend**

Given the court's previous granting of leave to amend to allege more specific facts about the accrual of Plaintiff's claims and any tolling, the court finds that further amendments would be futile.

## CONCLUSION

The court **GRANTS** Defendants' motions to dismiss Plaintiff's Second Amended Complaint and dismisses with prejudice.

This disposes of ECF Nos. 43 & 44.

**IT IS SO ORDERED.**

Dated: February 25, 2013

_____
LAUREL BEELER
United States Magistrate Judge